**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHRISTIE J. DAVIS, ) | CASE NO. 5:12-CV-2577 |
| ) | |
| Plaintiff, ) | JUDGE GWIN |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff, Christie J. Davis ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner")[1], denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this Report and Recommendation.

## I.   PROCEDURAL HISTORY

On September 3, 2009, Plaintiff filed an application for SSI, alleging a disability onset date of January 1, 2007. (Transcript ("Tr.") 12.) The application was denied

---

[1]  On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On July 6, 2010, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff appeared, was represented by an attorney, and testified. (*Id.*) A vocational expert ("VE") also testified. (*Id.*) On May 6, 2011, the ALJ found that Plaintiff was not disabled. (Tr. 21) On August 20, 2102, the Appeals Counsel declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On October 16, 2012, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 16, 17, 19.) Plaintiff argues that the ALJ erred at step three of the sequential analysis by failing to thoroughly analyze whether Plaintiff's multiple sclerosis ("MS") satisfied the requirements of Listing 11.09(A) such that Plaintiff was disabled.

## II. EVIDENCE[2]

### A. Personal and Vocational Evidence

Plaintiff was born on September 23, 1975. (Tr. 137.) She completed high school while taking special education courses. (Tr. 432.) She had prior work as a fast food worker. (Tr. 61-21.)

---

[2] The ALJ determined that Plaintiff had the severe impairments of MS, degenerative disc disease, borderline intellectual functioning, and affective disorder. (Tr. 14.) Plaintiff does not challenge the ALJ's conclusion with respect to her impairments other than MS. Accordingly, this Report & Recommendation discusses only the medical records and testimony that are relevant to that condition.

**B.     Medical Evidence**

   **1.     Treating Providers**

A September 21, 2007 MRI of Plaintiff's brain revealed multiple areas of increased T2 signal, consistent with MS.  (Tr. 580.)  On October 2, 2007, neurologist Andrew P. Stalker, M.D., examined Plaintiff, who complained of bilateral tingling and numbness in her legs.  (Tr. 571.)  Dr. Stalker also noted her complaints of double vision, joint pain and swelling, dizziness and difficulty walking.  (*Id*.)  He observed that her gait was "unsteady with a broadened base."  (Tr. 572.)  Dr. Stalker stated that he believed that Plaintiff had MS, and recommended that she undergo an MRI of her cervical and thoracic spine.  (*Id*.)  He prescribed a five-day regimen of IV Solu-Medrol. (*Id*.)

On October 3, 2007, Plaintiff was examined by her family physician, Mary Lynn Pavlica, D.O., who noted Dr. Stalker's diagnosis of MS. (Tr. 535.)

On October 15, 2007, Plaintiff underwent an MRI of her cervical and thoracic spine, which revealed moderate multiple scattered sclerosis plaques in the thoracic spinal cord.  (Tr. 568.)  The reviewing physician noted that some of the plaques showed "mild contrast enhancement, indicating [a] more active phase of the" MS.  (*Id*.)  On November 5, 2007, Dr. Stalker noted that Plaintiff had "absent vibratory sense in her ankles bilaterally," as well as "mildly reduced vibratory sensation at the knee" bilaterally. (Tr. 565.)  He described her gait as "normal spastic with a broadened base."  (*Id*.)  He prescribed Tysabri.  (*Id*.)

On March 31, 2008, Dr. Stalker noted that Plaintiff's gait was abnormal with a

3

broadened base, that she could not tandem walk, and that her reflexes were minimally brisk.  (Tr. 556.)  He reported that Plaintiff had decided against taking the Tysabri.  (*Id*.)  Dr. Stalker prescribed Avonex.  (*Id*.)  A May 31,2008 MRI of Plaintiff's brain revealed no new areas of abnormal signal in her brain.  (Tr. 550.)

On July 23, 2008, Dr. Stalker noted that Plaintiff had decided not to take Avonex because she did not want to have injections.  (Tr. 547.)  She could not take Tysabri because her health insurance would not cover the cost, so she was not taking any medication at that time.  (*Id*.)  Plaintiff reported dizziness and restless legs.  (*Id*.)  Dr. Stalker noted that Plaintiff's gait showed a broadened base.  (*Id*.)  He recommended that Plaintiff begin Copaxone.  (*Id*.)

On September 3, 2009, Plaintiff reported difficulty with standing during the prior six months.  (Tr. 546.)  She could not stand for more than 15 minutes without getting dizzy.  (*Id*.)  Plaintiff reported no falls, and no "clear cut relapses" of MS.  (*Id*.)  Dr. Stalker reported that Plaintiff's reflexes and straight away gait were normal, but that she was unable to tandem walk.  (*Id*.)  Plaintiff's "finger-to-nose" was "slightly ataxic."[3]  (*Id*.)  Dr. Stalker characterized her MS as "relapsing remitting" and recommended that she undergo another MRI of her brain.  (*Id*.)

On September 10, 2009, John S. Andrefsy, M.D., examined Plaintiff, who reported headaches, blurry vision and tingling in her legs.  (Tr. 544.)  Dr. Andrefsky noted Plaintiff's report that she had fallen two or three times in the prior three weeks.

---

[3]  Ataxia is a "failure of muscular coordination; irregularity of muscular action."  *Dorland's Illustrated Medical Dictionary* 170 (Saunders, 30th ed. 2003).

4

(*Id*.)  Dr. Andrefsky noted that Plaintiff had normal station and gait, with mild bilateral ataxia in her upper extremities during a nose-to-finger exam.  (*Id*.)  He prescribed Solu-Medrol.  (Tr. 545.)  A September 16, 2009, MRI of Plaintiff's brain revealed a new area of increased T2 signal in her left cerebellar peduncle, but noted otherwise minimal changes.  (Tr. 542-43.)

On October 29, 2009, Plaintiff reported "significant difficulties."  (Tr. 541.)  She was "unsteady on her feet and ha[d] had some falls."  (*Id*.)  Dr. Stalker noted gait and limb ataxia, and that her gait was "ataxic and unsteady."  (*Id*.)  Dr. Stalker opined that, "with [Plaintiff's] level of clumsiness . . . she would not be able to work."  (*Id*.)

On January 29, 2010, Dr. Stalker noted that Plaintiff's gait was "minimally ataxic," and that her left hand was ataxic with terminal tremor.  (Tr. 540.)  On April 9, 2010, Dr. Stalker noted Plaintiff's report that she had fallen at least once since her prior visit.  (Tr. 539.)  He noted that she "continues to be unsteady with walking."  (*Id*.)  Plaintiff's gait and finger-to-nose were ataxic.  (*Id*.)

On October 8, 2010, Dr. Stalker noted Plaintiff's continued problems with walking, including periodic falls.  (Tr. 589.)  Plaintiff reported feeling weak all over.  (*Id*.)  Dr. Stalker described Plaintiff's gait as "unsteady with impaired tandem walk."  (*Id*.)  Dr. Stalker prescribed Gilenya.  (*Id*.)  On December 13, 2010, Dr. Stalker observed that Plaintiff continued to have difficulty with the tandem walk, but that, otherwise, Plaintiff was doing well on the new medication.  (*Id*.)

    **2.**    **Agency Reports and Assessments**

On July 8, 2008, agency consulting physician Diane Manos, M.D., completed a

physical residual functional capacity ("RFC") assessment. (Tr. 382-89.) She assigned Plaintiff the following limitations: occasionally lifting 50 pounds and frequently lifting 25 pounds; standing and/or walking for about six hours in an eight-hour workday; sitting for about six hours in an eight-hour workday; occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; and never balancing. (Tr. 383-84.)

**C.    Hearing Testimony**

    **1.    Plaintiff's Testimony**

At her April 20, 2011 administrative hearing, Plaintiff testified as follows:

Prior to applying for disability, Plaintiff worked at McDonald's, but had to stop because she grew dizzy and fell. (Tr. 40.) She was dizzy every day, and fell two or three times each month. (*Id*.) Her falls had caused her to injure her back and knee. (Tr. 41.) Her legs gave out when she tried to walk. (Tr. 42.) She had nearly fallen down the stairs at her home. (Tr. 58.)

    **2.    VE Testimony**

The ALJ described the following hypothetical individual with Plaintiff's age, education and work experience to the VE:

> Consider a hypothetical individual . . . [with] the [RFC] to lift and/or carry up to 20 pounds occasionally, ten pounds frequently; stand and/or walk with normal breaks for a total of about two hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; occasionally climb ramps and stairs and balance; never climb ladders, ropes or scaffolds; frequent handling or gross manipulation bilaterally; frequent operation of foot controls bilaterally; avoid concentrated exposure to hazards such as machinery, commercial driving and unprotected heights . . . [with] non-exertional limitations to understand and follow simple and repetitive tasks in a relaxed or

6

>       slower[-]paced setting without strict time pressures or
>       production quotas.

(Tr. 62.) The VE opined that the hypothetical individual would be able to perform work as an order clerk, inspector, can bander and assembler. (Tr. 62-63.)

### III.     STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a

severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent herfrom doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.   SUMMARY OF COMMISSIONER'S DECISION

In his April 14, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

1. Plaintiff has not engaged in substantial gainful activity since September 3, 2009, the application date.

2. Plaintiff has the following severe impairments: MS, degenerative disc disease, borderline intellectual functioning, and affective disorder.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.9679(a) except [Plaintiff can only] lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for a total of about two hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; occasionally climb ramps and stairs and balance; never climb ladders, ropes or scaffolds; frequent handling or gross manipulation bilaterally; frequent operation of foot controls bilaterally; avoid concentrated exposure to hazardous machinery, commercial driving and unprotected heights . . . [Plaintiff can] understand and follow simple

>   and repetitive tasks in a relaxed or slower[-]paced setting without strict time pressures or production quotas.
>
> 5. Plaintiff is unable to perform any past relevant work.
>
> 6. Plaintiff was born on March 23, 1975 and was 34 years old, which is defined as a younger individual age 18-44, on the date the application was filed.
>
> 7. Plaintiff has at least a high school education and is able to communicate in English.
>
> 8. Transferability of job skills is an issue in this case because Plaintiff's past relevant work is unskilled.
>
> 9. Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform
>
> 10. Plaintiff has not been under a disability, as that term is defined in the Act, since September 3, 2009, the date the application was filed.

(Tr. 14-21.)

### V.  LAW & ANALYSIS

**A.  Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the

evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Arguments

Plaintiff argues that substantial evidence does not support the ALJ's conclusion at step three of the sequential analysis, and that the ALJ did not fully evaluate this issue. Specifically, Plaintiff argues that evidence in the record demonstrates that she satisfied the requirements of Listing 11.09(A), and the ALJ erred in failing to analyze that Listing in denying her application. The Commissioner responds that substantial evidence supports the ALJ's conclusion at step three that the effects of Plaintiff's MS did not correspond to the requirements of the relevant listing. Plaintiff's arguments are well taken.

At the third step of the sequential analysis, an applicant will be found disabled if her impairment meets or equals one of the impairments contained in the Listing of Impairments ("Listings"). 20 C.F.R. § 404.1525(a). A claimant must satisfy all of a

Listing's criteria in order to be found disabled on that basis. 20 C.F.R. § 404.1525(c)(3). Listing 11.09 sets forth the criteria for MS. *See* 20 C.F.R. Pt. 404, Subpt. 404, App. 1, 11.09. Plaintiff contends that she satisfies the requirement of section (A) of Listing 11.09, which requires "[d]isorganization of motor function, as described in [Listing] 11.04(B)." *Id*. Listing 11.04(B) describes disorganization of motor function as "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station," and, in turn, refers to Listing 11.00(C). 20 C.F.R. Pt. 404, Subpt. 404, App. 1, 11.04. Listing 11.00(C) details the nature of the disorganization of motor function required by the Listings:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. 404, App. 1, 11.00(C).

Here, the ALJ concluded, at step two of his analysis, that Plaintiff's MS constituted a severe impairment. (Tr. 14.) At the beginning of his third-step analysis, the ALJ made reference to Listings 1.04 and 11.09:

> No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. In reaching the conclusion that [Plaintiff] does not have an impairment or combination of impairments that meet[s] or medically equal[s] a listed impairment, the undersigned has also considered the opinion of the State

11

> Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion. All of the [L]istings were considered in reaching this finding, with specific emphasis on Listing 1.04 and 11.09.

(*Id*.) Thereafter, the ALJ discussed the criteria of Listing 1.04 in detail, but did not specifically discuss the criteria for Listing 11.09. (Tr. 14-16.) Plaintiff argues that the ALJ's mere reference to Listing 11.09 was insufficient to support the ALJ's conclusion that her MS did not satisfy the criteria for that Listing.

Plaintiff relies on the Sixth Circuit's decision in <u>Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411 (6th Cir. 2011)</u>, to support her argument. In that case, the ALJ determined, at step two of the sequential analysis, that the claimant had the severe impairments of back pain and adjustment disorder. At step three of the analysis, the ALJ made a general conclusion that the claimant's impairments did not satisfy the criteria for any listing in Section 1.00, which addresses musculoskeletal conditions, or in Section 12.00, which addresses mental impairments. Thereafter, although the ALJ continued to discuss the criteria for Listing 12.04 in detail, the ALJ did not address any specific listing in Section 1.00.

The Sixth Circuit determined that the ALJ had erred in failing to analyze whether the claimant's back impairment satisfied the criteria for any of the Listings in Section 1.00. <u>Id. at 416</u> ("Ultimately, the ALJ erred by failing to analyze [the claimant's] physical condition in relation to the Listed Impairments. Put simply, he skipped an entire step of the necessary analysis."). According to the Sixth Circuit, the ALJ's failure to do so deprived the court of the ability to conduct a meaningful review of his decision:

> In short, the ALJ needed to actually evaluate the evidence,

> compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

*Id*.

The ALJ's third-step analysis in this case strongly resembles the third-step analysis of the ALJ in *Reynolds*. As in that case, here, the ALJ generally concluded, in the first paragraph of his analysis, that Plaintiff's impairments did not satisfy the criteria of Listing 11.09 or Listing 1.04, and then proceeded to analyze the criteria of only Listing 1.04, without any further discussion of Listing 11.09. This is precisely the type of third-step analysis that the court rejected in *Reynolds*. Accordingly, under *Reynolds*, the ALJ in this case erred in failing to fully analyze whether Plaintiff's MS satisfied the criteria of Listing 11.09. *See* Shea v. Astrue, No. 1:11-CV-1076, 2012 WL 967088 (N.D. Ohio Feb. 13, 2012) (Burke, M.J.) ("Without more than a conclusory statement regarding [the plaintiff's] physical impairments, the Court is deprived of the opportunity to provide meaningful judicial review and cannot determine whether the ALJ's conclusion is supported by substantial evidence.")

The Commissioner, however, asserts that *Reynolds* is distinguishable, and the reasoning of *Reynolds* does not apply here. In *Reynolds*, the Commissioner argues, the Sixth Circuit determined that the ALJ's error was not harmless because "it [was] possible that the evidence that [the claimant] put forth could meet" the criteria of the relevant listing. 424 F. App'x at 416. The Commissioner further argues that the medical evidence in this case does not support Plaintiff's argument that her MS

13

satisfies the criteria of Listing 11.09(A), and, unlike the decision at issue in *Reynolds*, in this case the ALJ discussed – at other points in his decision – evidence that precluded the application of Listing 11.09(A). Specifically, the Commissioner contends that medical evidence discussed by the ALJ during his step-four analysis demonstrates that the disorganization of Plaintiff's motor function was not sustained; thus, Plaintiff could not satisfy the criteria of Listing 11.09(A), and any error at step three was harmless.

The Commissioner's arguments are not well taken. In this case, the ALJ discussed medical evidence relevant to the issue of Plaintiff's motor function disorganization during his analysis of step four. Without further discussion, however, that evidence does not demonstrate that Plaintiff's MS was insufficient to satisfy the criteria of Listing 11.09(A). The record reflects that, during treatment subsequent to her diagnosis, Plaintiff's neurologist repeatedly noted that Plaintiff's MS was interfering with her motor functions. *See, e.g.,* Tr. 402 (March 31, 2008, noting that Plaintiff's gait was "abnormal with a broadened base" and that she could not tandem walk); 393 (July 23, 2008, noting that Plaintiff's gait showed a broadened base); 463 (September 3, 2009, noting that Plaintiff's finger to nose was "slightly ataxic" and that she could not tandem walk); 461 (September 10, 2009, noting that Plaintiff's symptoms – including unsteadiness in her gait – were worsening and that she had ataxia in her upper extremities); 541 (October 29, 2009, noting Plaintiff's gait and limb ataxia, characterizing her gait as "ataxic and unsteady," and describing Plaintiff as clumsy due to her MS); 540 (January 20, 2010, noting "terminal tremor" in Plaintiff's left hand and describing Plaintiff's gait as "minimally ataxic"); 539 (April 9, 2010, noting that Plaintiff was "unsteady with walking and ha[d] at least one fall," and that her gait and limbs were

ataxic); 589 (October 8, 2010, noting that Plaintiff was "having continued problems with walking and falls," and that her gait was "unsteady with impaired tandem walk"). These observations – many of which were cited by the ALJ in his step-four analysis – reflect that Plaintiff's physicians noted that her MS was causing tremor and ataxia that interfered with her motor functions in her arms and legs. These difficulties are precisely the type of symptoms that the Listings characterize as significant with respect to whether a claimant's MS is disabling. *See* Listing 11.00(C) (noting that disorganization of motor function includes "tremor . . . [and] ataxia," and that "the assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms"). Absent some discussion from the ALJ regarding these medical observations and their relation to the criteria of Listing 11.09(A), this Court cannot meaningfully determine whether substantial evidence supports the ALJ's conclusion that Plaintiff's MS did not satisfy that Listing. *See, e.g., Grohoske v. Comm'r of Soc. Sec.*, No. 3:11-CV-410, 2012 WL 2931400, *3, n.52 (Baughman, M.J.) (remanding, noting that "the ALJ's discussions at step four were not so extensive as to provide sufficient evidence of [the plaintiff's] impairments in light of the listing as to permit a court to conclude from other parts of the ALJ's opinion that the listings were not met.")

The Commissioner argues that the medical evidence in the record reflects that Plaintiff's relevant symptoms were not "persistent" – as required by Listing 11.04(B) – because Plaintiff's medical course showed periods of improvement in her tremors, unsteadiness and ataxia. This argument, however, overlooks relevant case law regarding the nature of Plaintiff's MS, which – as the Sixth Circuit has recognized – is a

15

remitting and relapsing disease:

> Multiple sclerosis is an incurable, progressive disease subject to periods of remission and exacerbation.  Because the . . . period wherein plaintiff attempted to work and attend school was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition.  Rather, he should have considered that time-span as merely a period of remission in a continuing disability in making this finding.

*Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981); *see also Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990) ("[I]n evaluating multiple sclerosis, or any other episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities.").  Here, the ALJ observed that Plaintiff's condition improved at points (Tr. 18), but he did not discuss whether those improvements occurred during periods of remission.  Nor did he discuss evidence demonstrating that, at other times, Plaintiff's condition deteriorated.  Given the absence of any such discussion – and in light of case law requiring an ALJ to consider the remitting and relapsing nature of MS – the ALJ's discussion of Plaintiff's condition at step four of his analysis fails to support his conclusion, at step three, that her MS was not sufficient to satisfy the criteria of Listing 11.09(A).[4]  Accordingly, Plaintiff is entitled to remand in this case.  On remand, the ALJ

---

[4] The Commissioner also argues that the ALJ's conclusion is supported by the RFC assessments completed by state agency consultants, who assigned Plaintiff limitations consistent with the ability to perform medium work.  Although the ALJ did make passing reference to these assessments, he did not discuss them in the context of the criteria of Listing 11.09(A).  Further, because these assessments do not address the criteria of the Listing at issue, they do not provide sufficient support to conclude that the ALJ's error in this case was harmless.

should thoroughly discuss the evidence relevant to Listing 11.09(A) and consider whether, in light of that evidence, Plaintiff's MS satisfies the criteria of that Listing.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this Report and Recommendation.

s/ <i>Nancy A. Vecchiarelli</i><br>U.S. Magistrate Judge

Date: May 10, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <i>reh'g denied</i>, 474 U.S. 1111 (1986).**